FILED

06/30/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0717

DA 25-0717

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 139N

IN RE THE PARENTING OF
A.L.W.,

    A Minor Child,

DUSTIN WEIDENKELLER,

    Petitioner and Appellee,

  and

DAVYS ARRIGTON (fka LOWE),

    Respondent and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DR 16-622
                Honorable Jason T. Marks, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jill A. Hughes, JLaw, PLLC, Missoula, Montana

      For Appellee:

          Lucy Hansen, Hansen Law Practice, PLLC, Missoula, Montana

                          Submitted on Briefs:  June 3, 2026
                                 Decided:  June 30, 2026

Filed:

                  _____
                             Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Davys Arrington (Arrington) appeals the Findings of Fact, Conclusions of Law, and Order Denying Respondent's Notice of Intent to Move and Motion to Amend Final Parenting Plan issued by the Fourth Judicial District Court, Missoula County, on June 23, 2025.

¶3 Arrington asserts the District Court: (1) abused its discretion in adopting the parenting plan proposed by Petitioner Dustin Weidenkeller (Father) in the event Arrington moves to Idaho; (2) violated Arrington's constitutional right to travel; (3) abused its discretion by relying on incomplete findings, making conclusions without related findings, admitting hearsay, and missing the balance of the parties' interests; and (4) abused its discretion by denying relief from judgment and treating the case as consolidated with a related case without an order of consolidation.[1] We affirm.

---

[1] We note that at the outset of the contested hearing on April 23, 2025, the District Court called both this case—DR 16-622—and a case regarding a parenting plan for A.L.W.'s half-sibling—DR 24-791—and noted that all parties and their counsel were present. The court stated, "This is a joint hearing for purposes of addressing Respondent's Notice of Intent to Move and Motion to Amend Parenting Plan in each of the cases. Are there any issues the parties want to talk about before I start hearing testimony?" Neither party set forth any objection to proceeding on a joint hearing and the hearing proceeded accordingly. Now on appeal, Arrington asserts for the first time that the District Court erred in treating the related cases as consolidated without an order of consolidation. First, it is clear from the record the court did not consolidate DR 16-622 and

2

¶4     The parties share one child together, A.L.W., currently 10 years old.  On March 17, 2022, the parties entered a Stipulated Amended Final Parenting Plan providing for joint, shared parenting, with Father parenting A.L.W. approximately 130 days per year and designated as the primary parent in even-numbered years and Arrington designated as the primary parent in odd-numbered years for tax purposes.  On October 25, 2024, Arrington filed a Notice of Intent to Move and Motion to Amend Parenting Plan along with a proposed parenting plan, which she anticipated coming into force upon her relocation to Idaho.

¶5     As to her intention to move, although Arrington asserted A.L.W. would benefit through a richer family life, a safer neighborhood, and more support through extended family and stability, Arrington expressed her desire to relocate to Idaho was primarily related to her recent marriage to Taylor Arrington who resides in Caldwell, Idaho.  Father objected to Arrington's notice and motion, and likewise included his proposed parenting plan—anticipating A.L.W. to remain on a primary basis with him in the event Arrington relocated to Idaho.  The District Court held a contested hearing on April 23, 2025. Thereafter, the court denied Arrington's motion to amend the parenting plan and ordered that, in the event Arrington were to relocate to Idaho, Father's amended parenting plan would be adopted, under which A.L.W. would remain in Montana and reside with Father on a primary basis.  Arrington appeals.

---

DR 24-791, it merely held a joint hearing.  Further, this Court does not address issues raised for the first time on appeal as we will not place a district court in error for an action in which the appealing party acquiesced or actively participated.  *State v. Favel*, 2015 MT 336, ¶ 22, 381 Mont. 472, 362 P.3d 1126.  As such, we do not address this claimed error further.

¶6    We review the underlying findings in support of a district court's decision regarding modification of a parenting plan under the clearly erroneous standard. *In re Parenting of G.M.N.*, 2019 MT 18, ¶ 10, 394 Mont. 112, 433 P.3d 715 (citing *Guffin v. Plaisted-Harman*, 2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888). We review a district court's conclusions of law to determine if they are correct. *In re Parenting of G.M.N.*, ¶ 10 (citing *In re Parenting of C.J.*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028).

¶7    "A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the correct decision." *In re Parenting of G.M.N.*, ¶ 11 (citation omitted). It is not the function of this Court to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court. *In re Parenting of G.M.N.*, ¶ 11 (citing *In re A.F.*, 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266). The ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented. *In re Parenting of G.M.N.*, ¶ 11 (citing *In re Marriage of Wolfe*, 202 Mont. 454, 458, 659 P.2d 259, 261 (1983)). Absent clearly erroneous findings, we will not disturb a district court's decision regarding a parenting plan unless there is a clear abuse of discretion. *In re Parenting of G.M.N.*, ¶ 11 (citing *In re Parenting of C.J.*, ¶ 13).

¶8    Arrington contends the District Court's decision impermissibly infringed upon her fundamental right to travel. We do not agree. We have previously recognized:

> Cases involving a proposed relocation of a parent with a child are difficult as they are rarely amenable to compromise and involve balancing a parent's right to resettle in another location, protecting the best interests of the child,

4

and the competing rights of the other parent. Although the mother has a constitutional right to travel and relocate, this right does not outweigh the father's right to have regular and ongoing parental contact with his [son] and the child's right to a relationship with [his] father.

*In re Parenting of G.M.N.*, ¶ 12 (internal citation omitted). The District Court properly applied this principle. It acknowledged that the parties' Stipulated Final Parenting Plan established a shared parenting arrangement in which A.L.W. is to be cared for by Father approximately 130 days per year and raised in a manner that affords him frequent, continuing, and meaningful contact with both parents and extended family. The court's decision does not restrict Arrington's ability to relocate; it merely determines that A.L.W.'s best interests are not served by relocating with her. This does not constitute a violation of Arrington's constitutional right to travel.

¶9 In proposed relocation cases, the court must try to reconcile the interests of both parents with the best interest of the child. As discussed in *In re Parenting of G.M.N.*, §§ 40-4-212 and -219, MCA, set forth the factors a court considers in determining if amendment to a parenting plan is in the best interest of the child. In pertinent part, § 40-4-212, MCA, provides:

(1) The court shall determine the parenting plan in accordance with the best interest of the child. The court shall consider all relevant parenting factors, which may include but are not limited to:

(a) the wishes of the child's parent or parents;

(b) the wishes of the child;

(c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest;

5

(d) the child's adjustment to home, school, and community;

(e) the mental and physical health of all individuals involved;

(f) physical abuse or threat of physical abuse by one parent against the other parent or the child;

(g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent;

(h) continuity and stability of care;

(i) developmental needs of the child;

(j) whether a parent has knowingly failed to pay birth-related costs that the parent is able to pay, which is considered to be not in the child's best interests;

(k) whether a parent has knowingly failed to financially support a child that the parent is able to support, which is considered to be not in the child's best interests;

(l) whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to the child's best interests. In making that determination, the court shall consider evidence of physical abuse or threat of physical abuse by one parent against the other parent or the child, including but not limited to whether a parent or other person residing in that parent's household has been convicted of any of the crimes enumerated in 40-4-219(8)(b).

(m) adverse effects on the child resulting from continuous and vexatious parenting plan amendment actions.

¶10   In pertinent part, § 40-4-219, MCA, provides:

(1) The court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child.

6

(a) In determining how a proposed change will affect the child, the court shall consider the potential impact of the change on the criteria in 40-4-212 and whether:

(i) the parents agree to the amendment;

(ii) the child has been integrated into the family of the petitioner with consent of the parents;

(iii) the child is 14 years of age or older and desires the amendment; or

(iv) one parent has willfully and consistently:

(A) refused to allow the child to have any contact with the other parent; or

(B) attempted to frustrate or deny contact with the child by the other parent.

(b) If one parent has changed or intends to change the child's residence in a manner that significantly affects the child's contact with the other parent, the court shall consider, in addition to all the criteria in 40-4-212 and subsection (1)(a):

(i) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;

(ii) the reasons of each parent for seeking or opposing the change of residence;

(iii) whether the parent seeking to change the child's residence has demonstrated a willingness to promote the relationship between the child and the nonrelocating parent; and

(iv) whether reasonable alternatives to the proposed change of residence are available to the parent seeking to relocate.

¶11 Arrington challenges the District Court's conclusions of law regarding the § 40-4-212, MCA, best interest factors, asserting they are unsupported by the court's

7

findings of fact and the case record. However, our review of the record does not support her contentions. The contested hearing made clear the parents' wishes sharply diverge as each seeks to be the primary residential parent if Arrington moves to Idaho. The District Court met with A.L.W. in chambers and in its order concluded that while A.L.W. desires to move to Idaho, his desires center around material things he believes he will have after the move, and his desire for his mother to be happy.

¶12 The District Court's findings thoroughly address A.L.W.'s interaction and interrelationship with his parents, siblings, extended family, and other individuals central to his daily life. The findings reflect that A.L.W. and Father enjoy a consistent, predictable, and supportive relationship. A.L.W. is well-adjusted to his home, school, and community in Missoula. The evidence demonstrates he is well-bonded with his younger half-brother, participates in football, participates in church activities and church summer camp, attends an outdoor summer camp, has friends around Frenchtown he will attend school with, has generally done well in school,[2] and is fully integrated into the Weidenkeller family's regular activities and gatherings.

¶13 The District Court found no diagnosed mental health concern for either parent. It did, however, credit Father's testimony as to his concerns over Arrington's frequent relocations and Arrington's tendency to prioritize her own wishes over A.L.W.'s—a conclusion consistent with the record, including Arrington's personally motivated decision to relocate. The court shared Father's concern and was also troubled by Arrington pursuing

---

[2] Although since the issue of moving to Idaho came up, Father testified A.L.W. has been absent 7 ½ days, tardy 17 times, and his grades have gone down.

8

relationships out of state given A.L.W.'s need for stability. The District Court did not find any physical abuse, or threat of physical abuse, in the relevant past or any unresolved chemical dependency issues.

¶14 The record further supports that Arrington has historically led a comparatively unstable lifestyle marked by impulsive decision-making. She has three children with three different fathers, maintains contentious relationships with at least two of them, and was evasive regarding the paternity of her third child. She has frequently changed residences. Further, she exposed A.L.W. to an individual with a documented history of violence toward women and children, violating the parenting plan and lying to Father in the process. These findings reasonably informed the court's assessment of stability, continuity, and Arrington's capacity to make sound decisions regarding A.L.W.'s welfare.

¶15 The District Court's order makes clear that A.L.W.'s best interests are served by preserving his long-standing family and community connections in Missoula; that Father is better positioned to provide continuity of care and meet A.L.W.'s developmental needs if Arrington relocates; and that Father is more likely than Arrington to foster A.L.W.'s relationship with the other parent. We discern no abuse of discretion in the District Court's determination that the § 40-4-212, MCA, best interest factors weigh in favor of A.L.W. residing primarily with Father should Arrington move to Idaho.

¶16 Arrington next argues the District Court failed to apply the statutory factors of § 40-4-219(1)(b) and (4), MCA, and improperly disregarded her evidence. Father responds that Arrington simply regrets the manner in which she presented her case and her failure to introduce evidence sufficient to support relocating A.L.W. to Idaho. Father asserts that

9

while Arrington is free to live wherever she chooses, it is not in A.L.W.'s best interests to be uprooted from his family and community to accommodate Arrington's hasty marriage following a brief relationship—conduct Father characterizes as consistent with her long-standing pattern of instability.

¶17 Arrington essentially contends the District Court should have afforded greater weight to her testimony and evidence. She also argues the court failed to expressly analyze the § 40-4-219(1)(b)(i)-(iv), MCA, factors. Although the District Court stated that its decision was "[b]ased upon the statutory factors provided at Mont. Code Ann. §§40-4-212, 217, and 219" it did not separately enumerate each § 40-4-219(1)(b) factor. While a more explicit discussion would have been preferable, the court's findings and the record demonstrate it considered and applied the required statutory criteria.

¶18 The court found that relocating A.L.W. to Idaho would significantly impair his relationship with Father, as well as his relationships with his half-brothers, step-mother, teammates, and other family and friends in the Missoula area. The court found that A.L.W. had already been forced to change school five times and had not had stability during Arrington's parenting time as evidenced by her multiple relocations. These findings sufficiently address § 40-4-219(1)(b)(i), MCA.

¶19 The record also leaves no dispute as to Arrington's reason for relocating; she chose to marry Taylor Arrington, who resides in Caldwell, Idaho, after only a brief courtship. The District Court clearly understood and considered this under § 40-4-219(1)(b)(ii), MCA.

10

¶20 Although Father initially attempted to move to try to remain close to A.L.W. when Arrington changed residences, after four moves since 2016, Father and his wife recognized they could not maintain this level of disruption and instead bought a permanent home in Frenchtown to provide stability and consistency of care for A.L.W. The court further found that Arrington's proposed parenting plan would effectively sever the strong ties between Father and A.L.W. and would isolate A.L.W. from his family and extended family, friends, and community. The court cited an instance where Arrington unilaterally removed A.L.W. from Frenchtown Elementary and enrolled him in Jeannette Rankin Elementary in violation of the parties' parenting plan, and ultimately ended up being held in contempt of court and sanctioned for doing so. The court also found that Arrington, without Father's knowledge or consent, took A.L.W. to Spokane to spend the night with another paramour who had a history of violence against women and children, and again subjected A.L.W. to this concerning person in Missoula. This conduct implies Arrington is not committed to promoting A.L.W.'s relationship with Father, but is instead willing to engage in unilateral and deceitful conduct to get what she wants—considerations directly relevant to § 40-4-219(1)(b)(i) and (iii), MCA.

¶21 Although Arrington presented no evidence of reasonable alternatives to relocating A.L.W., Thomas Gambardella, father of A.M.G., A.L.W.'s half-brother, testified that he researched Caldwell, Idaho, and identified better employment and school opportunities in Missoula. Gambardella proposed that Taylor Arrington could instead relocate to the Missoula area, allowing Arrington to remain near established support networks. Given the

11

evidentiary presentation, there was no need for the District Court to specifically address § 40-4-219(1)(b)(iv), MCA.

¶22 Contrary to Arrington's argument, the District Court did apply § 40-4-219(4), MCA—which provides, "The court may amend the prior parenting plan based on subsection (1)(b) to provide a new residential schedule for parental contact with the child and to apportion transportation costs between the parents"—by amending the parenting plan to establish a new residential schedule in the event Arrington relocates.

¶23 The District Court was familiar with the history of this case and the parties' prior proceedings. Based on the evidence presented, it was reasonable for the court to conclude that relocating A.L.W. was not in his best interest. Arrington essentially asks this Court to reweigh the evidence and adopt her preferred interpretation of the record. We decline to do so.

¶24 The District Court was in the best position to observe the witnesses, assess their demeanor and credibility, and evaluate their motivations—matters squarely within its province. The District Court was not required to accept Arrington's contested testimony or her witnesses as accurate or persuasive. Although the District Court could have more explicitly articulated its analysis of the statutory factors—and we encourage such specificity in the future—the court's June 23, 2025 order is sufficiently comprehensive, grounded in the evidence, and adequate to permit meaningful appellate review.

¶25 After issuance of the June 23, 2025 order, Arrington sought to amend the judgment and obtain relief from the judgment. For the most part, she set forth the arguments she has asserted on appeal. Father countered that Arrington was just dissatisfied with the result of

12

trial and there was no basis in law or fact to amend the judgment or grant relief from it. Father did recognize though that there were what he deemed "housekeeping" type errors with his amended parenting plan that the court had adopted and he sought correction of such through a *nunc pro tunc* order. Arrington resisted and the District Court declined to issue a *nunc pro tunc* order, noting Father would have to work with Arrington to address any ambiguities.

¶26 We agree with the District Court; there is nothing in the ordered amended parenting plan warranting reversal or remand. However, this is not to say that tweaking the plan some is a bad idea as both parties have expressed housekeeping type complaints. Arrington is disappointed with the amended plan limiting travel arrangements to only air travel during the winter, and it requiring that her extended parenting periods occur only in Missoula. Arrington also claims confusion as to how she is supposed to provide A.L.W.'s health insurance, and expressed her desires to use the "Our Family Wizard" application to facilitate communication with Father. Reasonably, Father has expressed he is amenable to Arrington not being limited to air travel during the winter, to meeting her in Idaho Falls to accomplish exchanges for longer periods of parenting, and to her exercising holiday and longer periods of parenting in Idaho.[3] This seems reasonable and pointing out the obvious—that the drive from Caldwell to the greater Missoula area is about 7 to 8 hours in good conditions—it will not be feasible for Arrington to return A.L.W. to school on Monday morning at the end of her parenting times unless she brings A.L.W. to Missoula

---

[3] The parenting plan does not require Arrington to exercise her extended parenting times in Montana.

on Sunday. If such is the case, she should be able to parent until Monday morning when she drops him at school, otherwise the parties will need to make arrangements to accomplish the exchange on Sunday. Additionally, Father represented that he secured health insurance through Healthy Montana Kids—through which A.L.W. was covered when Arrington arranged the health insurance—at no cost to either party and that he has no objection to using Our Family Wizard. The parents should be able to, despite their contentious relationship, graciously accept the things upon which they do agree. As such, we leave these minor housekeeping type issues to the parties and their counsel to resolve.

¶27 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶28 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ LAURIE McKINNON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE

14